# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7561 | **DATE** | 6/11/2003 |
| **CASE TITLE** | Chicago Truck Drivers vs. Dudack Trucking Co., Inc | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order on plaintiff's motion for summary judgment. Plaintiff's motion to strike certain paragraphs of the affidavit of Arthur Dudack [22-1] is granted in part and denied in part. Defendant's motion to strike certain paragraphs of plaintiff's response to its statement of additional facts, or in the alternative to deem certain facts as admitted for summary judgment purposes [25-1] is denied. Plaintiff's motion for summary judgment [15-1] is granted and judgment, accordingly, is entered in favor of plaintiff and against defendant in the amount of $103,798.89.
(11) ■ [For further detail see order attached to the original minute order.]

No notices required, advised in open court.
No notices required.
✓ Notices mailed by judge's staff.
Notified counsel by telephone.
Docketing to mail notices.
Mail AO 450 form.
Copy to judge/magistrate judge.

courtroom deputy's initials: SM

number of notices: 2

JUN 1 3 2003 date docketed

date mailed notice: 6/12/2003

SM mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**JUN 1 3 2003**

CHICAGO TRUCK DRIVERS, HELPERS
AND WAREHOUSE WORKERS
(Independent) HEALTH MAINTENANCE
PROGRAM FUND, BERNIE SHERLOCK,
Trustee,

    Plaintiffs,

v.

DUDACK TRUCKING CO., INC., an
Illinois corporation,

    Defendant.

Case No. 01 C 7561

Magistrate Judge Ian H. Levin

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Summary Judgment in the cause. For the reasons hereinafter set forth, the Court grants Plaintiffs' Motion for Summary Judgment.

### INTRODUCTION

Defendant Dudack Trucking Co, Inc.[1] (hereinafter "Defendant") was incorporated in 1996, with Arthur Dudack (hereinafter "Dudack") as its president and principal stockholder. (Def.'s LR56.1(b)(3)(B) St. ¶ 12.) Prior to establishing Defendant, Dudack was employed as a truck driver for approximately thirty years and has been a card-carrying member of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) (hereinafter "Union") since 1986. (*Id.* ¶¶ 12,

---

[1]Defendant Dudack Trucking Co., Inc. is an employer as defined by the Employee Retirement Income Security Act. *See* 29 U.S.C. § 1002(2)(B)(5). (Pls.' LR56.1(a)(3) St. ¶ 3; Def.'s Resp. to Pls.' LR56.1(a)(3) St. ¶ 3.)



13.)

At issue in this case, is the "Collective Bargaining Agreement(s)"[2] Defendant signed with the Union requiring health and welfare contributions to Plaintiff Chicago Truck Drivers, Helpers and Warehouse Workers (Independent) Health Maintenance Fund.[3] Specifically, at issue is the provision(s) of the agreement(s) that expressly provides that the Defendant employer *inter alia* shall make monthly contributions to the health and welfare fund for health benefits on behalf of each "regular, casual, emergency or replacement Employee covered by [the] Agreement who performs any service for the [Defendant] employer in any day..." (Pls.' LR56.1(a)(3) St. ¶ 5; Ex. A, p. 21.)

Plaintiffs bring the subject motion contending that the facts in the case show that Defendant only made contributions on behalf of a single individual; namely, Dudack. (Pls.' LR56.1(a)(3) St. ¶ 6.) Plaintiffs thus assert that Defendant failed to remit contributions on behalf of all of its truck drivers pursuant to the agreement(s) and, consequently, seeks $91,001.00 in past due contributions.[4]

---

[2]The record shows that Dudack signed a document entitled "Addendum to the Collective Bargaining Agreement" for the period April 1, 1994 through March 31, 1998 (Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent)) on May 16, 1997 and a document entitled "Collective Bargaining Agreement" for the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) for the period April 1, 1998 through March 31, 2003 on June 14, 1999. (Pls.' Mem., Ex. A.)

[3]Plaintiff Chicago Truck Drivers, Helpers and Warehouse Workers (Independent) Health Maintenance Program Fund is a trust fund that was established for the purpose of providing health insurance benefits to union workers as defined by the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. § 1002(37). (Pls.' LR56.1(a)(3) St. ¶ 1.) Plaintiff Bernie Sherlock is a trustee and fiduciary of the Chicago Truck Drivers, Helpers and Warehouse Workers (Independent) Health Maintenance Program Fund as defined by ERISA, 29 U.S.C. § 1002(21). (*Id.* ¶ 2)
Defendant is a signatory to the collective bargaining agreement with the Chicago Truck Drivers, Helpers and Warehouse Workers' Union (Independent). (Pls.' LR56.1(a)(3) St. ¶ 4; Def.'s Resp. to Pls.' LR56.1(a)(3) St. ¶ 4.)

[4]Plaintiffs are also seeking $4,466.64 in contractual interest and $8,312.35 in attorney's
(continued...)

(*Id.* ¶¶ 7, 8.) Plaintiffs further aver that Defendant refused to provide certain payroll records pursuant to the relevant provision of the agreement(s). (*Id.* ¶ 9.)

Defendant, on the other hand, claims fraud in the execution. Defendant contends that, in 1997, Dudack advised his Union representatives, Fred Boudreau and Tom Daley (hereinafter "Daley"), that he was an owner-operator. (Def.'s LR56.1(b)(3)(B) St. ¶ 14.) Defendant then alleges that in a conversation Dudack had with Daley at the time, that Daley told Dudack, "If you want to keep your insurance, you have to pay for the insurance monthly and keep your Union card active." (*Id.*) At the same time, Defendant asserts that Dudack was told to sign the agreement at issue to allow him to maintain health benefits with the Union. (*Id.*) Defendant therefore contends that Dudack signed the agreement in reliance on Daley's representations that the agreement was needed only to maintain Dudack's health benefits as an owner-operator. (*Id.* ¶ 15.)

Defendant further asserts that the Union never told Dudack that contributions would be owed for Defendant's other employees until approximately five years later when the subject lawsuit was instituted. (Def.'s LR56.1(b)(3)(B) St. ¶ 17.) In the interim, the Union accepted Defendant's checks for Dudack's union dues as well as his health and welfare contributions. (*Id.* ¶ 18.) Defendant, however, made no contributions on behalf of its other employees because its understanding was that contributions were never owed on their behalf. (*Id.*)

In addition, Defendant avers that Dudack signed what he understood to be an extension of the agreement on June 14, 1999. (Def.'s LR56.1(b)(3)(B) St. ¶ 19.) Defendant asserts that Union representatives told Dudack that he needed to sign the agreement in order to continue receiving

---

[4](...continued)
fees for a total damage award of $103,798.89. (Pls.' LR56.1(a)(3) St. ¶¶ 8, 10.) This total damage amount has not been disputed herein by the Defendant.

3

health benefits through the Union as an owner-operator. (*Id.* ¶ 20.) Defendant therefore contends that both before and after Dudack signed the agreement to extend his benefits, Defendant only made contributions on Dudack's behalf based on the Union's representations regarding the scope of the agreement. (*Id.* ¶ 21.) Defendant further asserts that it is paying for the health benefits of its full-time truck drivers through non-union sources.[5] (*Id.* ¶ 22.) Moreover, according to Defendant, its drivers were never advised that they were entitled to receive health insurance benefits through the Union and they never received health insurance cards from the Union. (*Id.* ¶ 23.)

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC v. Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and [ ] draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the

---

[5]Defendant pays the health insurance premiums for all of its full-time truck drivers who have not waived their rights to coverage based on coverage obtained under their spouse's health insurance policies. (Def.'s LR56.1(b)(3)(B) St. ¶ 23.)

4

nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Linc*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505 or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## ANALYSIS

### I. MOTION TO STRIKE

Plaintiffs move to strike various paragraphs of Arthur Dudack's affidavit. For the following reasons, the Court grants, in part, and denies, in part, Plaintiffs' Motion to Strike.

Plaintiffs move to strike paragraphs 5-9 of the subject affidavit asserting that Dudack, in his affidavit testimony, seeks to create an issue of fact regarding fraud in the execution of the agreement by contradicting his prior sworn discovery testimony. (Pls.' Mot. to Strike at 3-4.) *See e.g., Kalis v. Colgate-Palmolive Co.*, 231 F3d 1049, 1055 (7th Cir. 2000)(*citing Buckner v. Sam's Club, Inc.*, 75 F3d 290, 292 (7th Cir. 1996)("[a]s a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony"); *Bank Leumi Le-Israel, B.M. v. Dennis Lee*, 928 F2d 232, 237 (7th Cir. 1991). Plaintiffs specifically aver that during the discovery phase of this case when Dudack responded to Plaintiffs' Interrogatory Number 5, his recollection of the agreement signing was restricted to two conversations (one that took place in 1998 and another one that took place before

the subject lawsuit was filed) with a Union representative (name unknown) in which no mention is made of his alleged status as an owner-operator. (*Id.* at 4.) However, subsequent to his discovery testimony, Dudack has presented affidavit testimony where he now presents names of two Union representatives and dates one conversation as having occurred in 1997. (*Id.*) The affidavit further describes a second conversation alleging that the Union representatives told him to sign the agreement to keep his health insurance. (*Id.*) Plaintiffs therefore contend that Dudack has changed his description of the conversations in order to allege additional facts that purportedly support his defense of fraud in the execution of the agreement.[6] (*Id.* at 4-5.)

Upon review of the subject discovery and affidavit testimony, the Court finds that paragraphs 5-9 (with the exception of the Court's discussion *infra* regarding the striking of a portion of paragraph 9) of Dudack's affidavit testimony do not contradict his sworn discovery testimony. Rather, the affidavit testimony is fairly consistent with the discovery testimony, but provides a more detailed description of the conversations that took place. Accordingly, the Court declines to strike these paragraphs on this basis.

On an alternative, independent basis, however, the Court strikes paragraph number 6 of Dudack's affidavit, which states: "I relied on the representations of Tom Daley that the Agreement I signed was needed only to maintain my health benefits as an owner-operator." This portion of paragraph 6 is being stricken because it is wholly conclusory and does not set forth facts that are admissible in evidence pursuant to Rule 56(e) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P.56(e); *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir.

---

[6]Plaintiffs further offer the additional basis that paragraphs 5-9 of Dudack's affidavit should be stricken because the statements as proffered do not provide an appropriate foundation as required by Rule 56(e) of the Federal Rules of Civil Procedure. (Pls.' Mot. to Strike at 4.)

1997)("[C]onclusory allegations and selfserving affidavits, if not supported by the record, will not preclude summary judgment.")

The Court further strikes the second sentence of paragraph number 9 of Dudack's affidavit. The Court strikes this portion of the subject paragraph on two independent bases. The first basis is that the portion of paragraph 9 that is being stricken is inconsistent with Dudack's sworn discovery testimony (i.e., his response to Interrogatory Number 5.) Secondly, the Court finds that Dudack's statement is wholly conclusory and does not set forth facts that are admissible in evidence, as the subject sentence does not set forth the person who made the statement, nor the place, date or time of the statement.[7] *See e.g., Haywood,* 121 F.3d at 1071.

Too, the Court has reviewed the cases cited by the Defendant in opposition to the Motion to Strike and finds that they are distinguishable from the situation here.

## II. MOTION FOR SUMMARY JUDGMENT

Plaintiffs assert that there is no genuine issue of material fact(s) with regard to Defendant's failure to make the required health and welfare contributions on behalf of "each regular, casual or replacement employee" of the Defendant covered by the agreement(s) between the Union and Defendant. (Pls.' Mem. at 1.) Plaintiffs thus aver that Defendant did not comply with the agreement(s) because it only made contributions on behalf of one single employee; namely, Dudack, despite the clear and unambiguous language of the agreement(s) requiring contributions for all employees. (Pls.' Reply at 1.)

Defendant, on the other hand, avers that it did not make contributions on behalf of all of its employees because its understanding was that contributions were never owed on their behalf. (Def.'s

---

[7]It bears noting that even if *arguendo* the subject portion of paragraph 9 was not stricken, for the reasons stated, *infra*, it would not change the Court's summary judgment decision here.

7

Mem. at 2.) Defendant, thus, avers that Union representatives told Dudack that he needed to sign the agreement(s) in order to continue receiving health benefits through the Union. (*Id.* at 2-3.) Defendant, therefore, asserts the defense of fraud in the execution of the agreement, in that, Dudack reasonably relied upon the representations of the Union's representatives.[8] (*Id.*)

The Seventh Circuit recognizes fraud in the execution as a viable defense to suits by funds to collect delinquent contributions under ERISA. *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 779 (7th Cir. 2002). "'Fraud in the execution,' . . . , entails deceiving a party to an agreement as to the very nature of the instrument it signs so that the party 'actually does not know what he is signing, or does not intend to enter into a contract at all.'" *Id.* (citation omitted.) In order to establish the defense of fraud in the execution, Defendant must prove (1) "that it did not know that it was signing a collective bargaining agreement that obligated it to make health benefit contributions" for all of Defendant's employed truck drivers and that (2) "its ignorance was excusable because it had reasonably relied upon the representations of the Union's representative." *Id.* at 780. *See also Ill. Conf. of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1365-66 (7th Cir. 1995); *Southwest Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987)("'[f]raud in the

---

[8]The Defendant did not raise fraud in the execution as an affirmative defense in its answer. The Seventh Circuit has expressly held, in a case with similar facts as here, that the failure to raise the fraud in the execution in the answer waives that issue and entitles a plaintiff, as here, to summary judgment on the issue of liability. *See e.g., Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1365 (7th Cir. 1995). However, Plaintiff did not raise the waiver issue herein in replying to the fraud in the execution issue advanced by Defendant in response to Plaintiff's Motion for Summary Judgment. Under the circumstances of this case, the Court, therefore, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, has determined that the pleadings will be treated as if they had actually raised (and not waived) the issue of fraud in the execution. Fed.R.Civ.P. 15(b); *See e.g.*, 5 Wright & Miller, Federal Practice and Procedure, § 1278, p. 495 (2d ed. 1990).

execution' arises when a party executes an agreement 'with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.'") If successful, the defense of fraud in the execution would void a collective bargaining agreement. *Laborers' Pension Fund*, 301 F.3d at 779.

Even *arguendo* if it can be said that Defendant satisfies element (1), *supra*, of the test for fraud in the execution, the Court finds that Defendant's ignorance is not excusable as, respectfully, no reasonable jury could reasonably conclude that Defendant's principal had "reasonably relied upon the representations of the union representative(s)." Initially, nowhere in his affidavit does Dudack actually factually aver that he was told by Plaintiff's representatives that he did not have to pay for the insurance of Defendant's employees. And Defendant's principal does not aver that he ever inquired as to whether he was responsible to pay for the health insurance of Defendant's employees. The Union representative(s) representations averred by Defendant relate only to the method for Defendant's principal to maintain his own insurance. Moreover, the Defendant's obligation to make contributions for the health insurance of its employees is clearly and unambiguously spelled out in more than one place in the prominently labeled "Collective Bargaining Agreements" executed by Defendant's principal. Defendant's principal plainly was not an unsophisticated businessman when he executed the subject Collective Bargaining Agreements. He was, then, commencing the operation of, and has continued to operate, a small trucking company. Too, at the subject time Defendant's principal had been a member of the Union since 1986. Finally, there is no allegation that Defendant's principal cannot read or that he did not read, understand or have an opportunity to read these collective bargaining agreements. This is most telling, as "[I]t is a fundamental principle of contract

law that a person who signs a contract is presumed to know its terms and consents to be bound by them."[9] *Paper Express, Ltd. v. Pfankuch Maschinen*, 972 F.2d 753, 757 (7th Cir. 1992); 3 Arthur L. Corbin, *Corbin on Contracts* 607 (1989); 13 Samuel Williston, *Williston on Contracts* 1577 (1988)."

The Court further finds that Dudack's reliance on *Operating Engineers Pension Trust et al. v. Gilliam*, 737 F.2d 1501 (9th Cir. 1984), respectfully, is misplaced. In *Gilliam*, an owner-operator of a construction company, Gilliam, wanted to join the union so that he could operate his bulldozer on a job on which the workers were unionized. *Id.* at 1502-03. Gilliam met with the union's representative who gave him documents to sign and represented that they were standard owner-operator forms needed in order for him to become a member of the union. *Id.* at 1504. Gilliam signed the forms relying on the union representative's word and did not read the documents. *Id.* Gilliam ended up working on a job for only one day. *Id.*

In *Gilliam*, the documents Gilliam signed included a collective bargaining agreement that obligated his company to make pension fund contributions for its workers. *Gilliam*, 737 F.2d at 1504-05. The court first noted that the facts of that case are "unusual." *Id.* at 1502. The court then determined, that given the circumstances, Gilliam reasonably and justifiably thought the documents involved only an application for union membership; consequently, his signing of a short-term agreement document did not create a binding collective bargaining agreement. *Id.* The court therefore concluded that no binding agreement was created because Gilliam did not know what he

---

[9]It also bears mentioning that the Seventh Circuit held in *Central States, Southeast and Southwest Areas Pension Fund v. McClelland, Inc.*, 23 F.3d 1256, 1258 (7th Cir. 1994) that "No matter what an employer and local union agree orally, the collective bargaining and contribution agreements establish the employer's obligation to the pension fund, which is not party to local understandings and limitations."

Also for four years, Defendant filed monthly reports to Plaintiff certifying that each report was in compliance with the collective bargaining agreement.

10

had signed and his ignorance was reasonable. *Id.* at 1505. As the Seventh Circuit has stated in distinguishing *Gilliam*, "There, the signing party was totally mislead as to the nature of the documents he was signing." *Laborers' Pension Fund, supra*, 301 F.3d at 781.

Therefore, considering the facts and circumstances discussed at pages 9-10 herein, the Court finds that *Gilliam* is factually and clearly distinguishable and significantly different from the case at bar.

## CONCLUSION[10]

In view of the foregoing, the Court grants Plaintiff's Motion for Summary Judgment and judgment, accordingly, is entered in favor of Plaintiff and against Defendant in the amount of $103, 798.89.

ENTER:

*[signature]*

IAN H. LEVIN
United States Magistrate Judge

Dated: June 11, 2003

---

[10]Defendant's Motion to Strike certain paragraphs of Plaintiff's response to its statement of additional facts or, in the alternative, to deem certain facts as admitted for summary judgment purposes is denied, as the Court finds upon review, that the challenged responses comply with Local Rule 56.1. In any event, even assuming *arguendo* that the subject factual statements were deemed admitted this would not change the outcome herein, as they are, essentially, the same as facts considered by the Court in its ruling discussed *supra*.